IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LATEEFAH MUHAMMAD,            )
                             )
        Plaintiff,           )
                             )
v.                           )   CASE NO. 3:22-CV-713-ECM-KFP
                             )
LEE COUNTY COMMISSION OF     )
LEE COUNTY, ALABAMA, et al., )
                             )
        Defendants.          )

## ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is the Motion to Strike and Motion to Dismiss (Doc. 9) filed by two Defendants, Deputy McLeroy and the Lee County Commission, and Plaintiff Lateefah Muhammad's Motion for Leave to Allow Immediate Limited Discovery (Doc. 15), along with the parties' supporting briefs and responses to the pending motions (Docs. 10, 16–17, 19–21). On March 10, 2023, the Court held a hearing on the motions. For the following reasons, it is ORDERED that Defendant's Motion to Strike is GRANTED; Plaintiff's Motion for Leave to Allow Immediate Limited Discovery is DENIED; and Plaintiff's oral Motion to Amend, made at the hearing on the pending motions, is DENIED. Further, the undersigned RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

I.      **Procedural History**

Muhammad, who is a lawyer, filed this action pro se related to her entry into the Lee County Justice Center (the "courthouse") on December 22, 2020. She alleges claims related to two requests made to her as she sought entry into the courthouse that day: (i) a

request that she show her bar association card to confirm her status as a lawyer and bypass the general security entry and (ii) a deputy's request that she remove her headpiece to enter security. Muhammad names real and fictitious parties, and she asserts three claims against named parties: Count I against a defendant she named Deputy Kamisi, Count II against a defendant she named Deputy McLeroy,[1] and Count III against the Commission. Doc. 1. Muhammad alleges that other unknown law enforcement officers were serving at the courthouse at the time of the events at issue, but she asserts no specific actions by them. Doc. 1 ¶ 3.

After being served with a copy of the Complaint, the Commission and Deputy McLeroy filed the pending motions challenging the pleading. Doc. 9. Sheriff Jay Jones, who is not named in this lawsuit, made a special and limited appearance challenging service on the defendant identified as Deputy Kamisi. Doc. 13. He demonstrated that no individual by that name was in court security at the time in question and no person by that name is employed by the Lee County Sheriff. Doc. 13-1. Plaintiff did not oppose the Motion to Quash Service on this erroneously named individual,[2] and the Court granted the motion. *See* Doc. 25.

---

[1] The Complaint states this Defendant is also known as Defendant McElroy. Doc. 1 at 2. Because defense counsel referred to him as Defendant McLeroy, the Court will refer to him by that name in this Order.
[2] Instead, Muhammad moved for leave to conduct early discovery. Doc. 15.

II.     **Motion to Strike, Motion for Limited Discovery, and Motion to Amend**

A.     <u>Fictitious Parties</u>

Defendants move to strike Muhammad's fictitious party allegations from the Complaint. In her pleading, Muhammad asserts that fictitiously named defendants engaged in mostly unspecified acts. She vaguely asserts the following:

> [The fictitious parties] include the corporations, partnerships, businesses, and/or individuals who are liable in any way . . . in committing the wrongs alleged herein. The Fictitious Parties include those persons and/or entities who in any way participated in, allowed, directed, managed and/or contributed to the acts of discrimination and harm caused the Plaintiff, who hired, entrusted, trained, failed to train and/or retrain, supervised and/or managed the employee(s) and/or persons involved in the incident during the discrimination which occurred that is the basis of this lawsuit, or employee(s) who contributed to the damages which resulted in any way; and, who aided, abetted and assisted in any manner in the actions committed as complained of herein whose true names are unknown to the Plaintiff but will be added when ascertained.

Doc. 1 ¶ 3.

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Outside of this general principle, there are circumstances where the practice may be permissible. For example, "[t]here may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name." *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (distinguishing "suing fictitious parties from real parties sued under a fictitious name" and holding district court abused its discretion in disallowing motion to add "Chief Deputy of the Jefferson County Jail John Doe" where court found description "sufficiently clear to allow service on the 'Chief'"); *compare Richardson*, 598 F.3d at 738 (claim against "John

Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" was properly dismissed as it was not sufficiently clear to identify defendant).

Where a party is particularly described in the pleading to sufficiently indicate that targeted discovery could reveal the party's identity, courts in this circuit have allowed the practice. *See, e.g. Dubose v. City of Hueytown*, CV-15-BE-852-S, 2016 WL 3854241, at *15 (N.D. Ala. July 15, 2016) (noting that "Fictitious Officers" were employees of the Defendant City, who was "in the best position to identify the adequately described Fictitious Officers through police records"); *Quad Int'l, Inc. v. Doe*, No. CIV.A. 12-673-N, 2013 WL 105253, at *3 (S.D. Ala. Jan. 7, 2013) (allowing plaintiff to bring action against fictitious party defendant "for a reasonable period of time necessary to conduct discovery on that issue"). Here, however, Muhammad has not specifically identified the fictitious actors. She uses broad and sweeping terms to capture an unlimited universe of potential "corporations, partnerships, businesses, and/or individuals" who committed unspecified "wrongs alleged herein." Doc. 1 ¶ 3. This is not the type of specific pleading that indicates targeted discovery will reveal the defendants' actual names. *Compare Taylor v. Brooks*, No. 5:20-CV-00467, 2020 WL 3129862, at *3–4 (N.D. Ala. June 12, 2020) (allowing limited early discovery based on proposed narrowly tailored discovery where fictitious defendants were real parties whose names were unknown to plaintiff but could be easily identified by defendant) and *King v. Alabama Dep't of Corr.*, No. 2:12-CV-294-WHA, 2012 WL 2568162, at *3 (M.D. Ala. July 2, 2012) (finding exception to rule on fictitious-party pleading is met where "an individual has identified real parties and used specific descriptors which could readily lead to identification of the unknown parties after

discovery") *with Huffman v. Dunn*, No. 4:20-CV-01293-CLM, 2021 WL 2533024, at *9 (N.D. Ala. June 21, 2021) ("Huffman's pleading of fictitious parties falls outside the exception [to allow fictitious description] because it leaves the reader unable to identify the particular individual described."). Therefore, the motion to strike should be granted.

B.   Discovery

Plaintiff seeks immediate discovery to identify the proper party erroneously identified as Deputy Kamisi, along with his and Deputy McLeroy's employer. *See* Doc. 15–16. Muhammad specifically identified Deputy Kamisi as the individual who told her she had to remove her headpiece when she sought entry into the courthouse on December 22, 2020. Doc. 1 ¶¶ 3, 5. This incorrectly identified defendant is essentially another fictitious party, and Muhammad does specifically identify him by the alleged actions he took on the subject day. She seeks early discovery to identify him.[3] While this pleading specificity might weigh in favor of early discovery, as described below, because identifying this individual would not yield Muhammad's ability to state a claim against him, immediate discovery is unwarranted.

Like she has done with Deputy Kamisi, Muhammad specifically but erroneously identified an employer for Count III, and Muhammad seeks discovery to identify the responsible party. In her Complaint, Muhammad alleges the Lee County Commission is "responsible . . . for the hiring, proper training, supervision, and instruction of Defendants

---

[3] Defendants' counsel asserted at the hearing that efforts have been made to identify this individual but that those efforts have been unsuccessful. There are no specific records, so far as they have been able to determine, that describe which deputy was assigned to the specific location on the date and time at issue. Defense counsel further noted that the events at issue occurred in December 2020 in the midst of the COVID pandemic when the courthouse was also imposing entry processes to address those related concerns.

Kamisi and McLeroy." Doc. 1 ¶ 27. She alleges the Commission "is liable for failing to adequately hire, train, supervise and instruct the Officers." Doc. 1 ¶ 28. In the Motion to Dismiss, the Commission has asserted, among other things, that it is not the entity responsible for these duties. Doc. 10 at 5–6. As discussed below, the identity of this party will also not support a plausible claim; therefore, early discovery would be in vain. Additionally, no discovery is necessary to identify this party because the Motion to Quash Service identifies the Lee County Sheriff as the party responsible for employing Deputy Kamisi and Deputy McLeroy (Doc. 13). Defense counsel confirmed this fact at the hearing on the pending motions.

Muhammad also seeks leave to conduct discovery to ascertain a slew of other information, including "all of the court security personnel who were on duty on the 22nd day of December, 2020"; video footage of the area where the interaction took place,[4] written reports of the incident, written logs regarding the alleged incident, and copies of certain policies. Doc. 16, 16-1. These proposed discovery requests, which Muhammad seeks to propound early, far exceed the scope of the identity of any fictious or erroneously identified party in the Complaint.

For these reasons, the motion for immediate discovery should be denied.

C.    Amendment

During the March 10 hearing, Muhammad orally moved for leave to amend her Complaint to clarify her claims. For example, she contended that an amendment would

---

[4] Counsel for the Commission and Deputy McLeroy represented at the hearing that there is no video footage from the day in question.

allow her to identify the proper employer for the claim she has asserted against the Commission and to more particularly plead claims against a single defendant that she has erroneously asserted against plural "Defendants." *See*, *e.g.*, Doc. 1 ¶¶ 9–11, 23–25, 33–35. Her proposed amendment would also properly name the defendant erroneously identified as "Kamisi" after early discovery to identify him. Muhammad acknowledged that no claim lies under 42 U.S.C. § 2000a as she has pleaded it, and she wishes to amend to articulate the statutory provision she intended to plead, 42 U.S.C. § 2000a-1, for her discrimination claim. *See* Doc. 17 at 4–5.

In assessing the sufficiency of a complaint, a reviewing court is to look at the complaint as a whole, considering whether all of the facts alleged raise a claim that is plausible on its face. *See*, *e.g.*, *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1382 (11th Cir. 2010). Often, a pro se plaintiff is given one opportunity to amend her pleading before a court dismisses the action for failure to state a claim. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (holding that, prior to "dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies'") (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). Indeed, "when a more carefully drafted complaint might state a claim, a pro se litigant 'must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) (quoting *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). However, "a district court may properly deny leave to amend the complaint . . . when

such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). "[T]hat is, where even "a more carefully drafted complaint could not state a claim," dismissal is appropriate. *Alberto*, 770 F. App'x at 469. "'Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed. . . . The futility issue is concerned less with whether [a plaintiff] *has* otherwise stated a claim against the [defendant] than with whether, when all is said and done, he *can* do so." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (emphasis in original)).

Amending would be futile here. If the proper defendant were named for "deputy Kamisi," Muhammad would still be unable to state a plausible claim against him for the same reasons she cannot state a plausible claim against Deputy McLeroy, as discussed below. Similarly, the claim she seeks to pursue against the employer responsible for hiring, training, supervising, and instructing the individual deputies would be futile even against the proper entity. Allowing amendment to clean-up the plural designations, substitute the proper parties, and edit the statutory provision will not change the lacking legal foundation for Muhammad's claims. Therefore, the undersigned finds that any amendment would be futile, and the motion for leave to amend should be denied.

## III.   Motion to Dismiss

### A.   <u>Failure to State a Claim—Legal Standard</u>

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a plaintiff must present "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.[5] All litigants, pro se or not, must comply with the Federal Rules of Civil Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). The pro se litigant in the instant case is also a licensed attorney. Doc. 1 ¶ 1.

   B.   Muhammad's Claims

Muhammad purports to bring three claims, one against each named defendant. Count I is asserted against Deputy Kamisi, whose alleged infraction was that he imposed constitutionally deficient security measures when he "told Plaintiff she had to remove her headpiece before she could enter" the courthouse. Doc. 1 ¶ 5. Muhammad alleges that she informed the deputy that the headpiece "represents her religious attire" and that she is a Muslim. Kamisi told Muhammad the headpiece was not a kufi and, thus, did not represent Muslim attire. Doc. 1 ¶ 5. The Court understands Muhammad to allege Kamisi violated her right to religious freedom[6] and did so pursuant to an official policy in violation of "Title

---

[5] In response to the Motion to Dismiss, Muhammad filed her own declaration (the same affidavit filed in support of her motion for discovery). *See* Docs. 17-1, 20-1. This declaration has not been considered in reviewing the motion to dismiss; therefore, Defendants' Rule 12(b)(6) motion need not be converted to a motion for summary judgment. *See Jackson v. Countrywide Home Loans, Inc.*, No. 2:11-CV-327-MEF, 2011 WL 5358576, at *1 (M.D. Ala. Nov. 7, 2011) (recognizing that court has discretion to decline to convert motion to dismiss into summary judgment motion) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 & n.17 (3d ed. 2004) (stating that "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it" and collecting cases) and *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) (stating that "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings)).

[6] The complaint vaguely and confusingly asserts Muhammad was "unlawfully deprived . . . of her legal rights guaranteed to her by the United States Constitution and/or the Laws of Alabama by denying the

42 U.S.C. § 1981 (equal rights under the law), 1983 (protection from deprivation of rights), 2000a (protection against discrimination or segregation in public places), et seq.,[7] and the First and Fourteenth Amendments to the United States Constitution." Doc 1 ¶ 7 (emphasis omitted). Muhammad alleges she was damaged and seeks to recover $2 million, among other measures of recovery. Doc. 1 ¶ 11.

Count II is asserted against deputy McLeroy, who is alleged to have violated Muhammad's rights by insisting that she show her bar association card to enter the courthouse without a security search. Doc. 1 ¶¶ 13–19. Muhammad contends this was discriminatory and caused her, as "a person of African descent, . . . a woman, and . . . a Muslim," harm for which she seeks various damages, including $2,000,000.00. Doc. 1 ¶¶ 23–25. Again, she asserts violations of "Title 42 U.S.C. § 1981 (equal rights under the law), 1983 (protection from deprivation of rights), 2000a (protection against discrimination or segregation in public places), et seq., and the First and Fourteenth Amendments to the United States Constitution." *Id*. at ¶ 21 (emphasis omitted).

Court III is asserted against the Commission as the entity responsible "for hiring, proper training, supervision, and instruction" of Defendant McLeroy and the defendant identified as Kamisi. Doc. 1 ¶ 27. As with the above claims, she alleges violations of "Title 42 U.S.C. § 1981 (equal rights under the law), 1983 (protection from deprivation of rights),

---

Plaintiff the right to wear a headpiece that represents her religious attire" (Doc. 1 ¶ 5 (emphasis omitted)), while also asserting that she was later permitted to enter the courthouse without being subjected to a search (Doc. 1 ¶ 18). As discussed in the text, Muhammad confirmed at the hearing that she was not required to remove her head piece.

[7] As noted, Muhammad acknowledges that no claim lies under 42 U.S.C. § 2000a; however, she argues she intended to bring her claims under 42 U.S.C. § 2000a-1. *See* Doc. 17 at 4-5.

2000a (protection against discrimination or segregation in public places), et seq., and the First and Fourteenth Amendments to the United States Constitution." *Id.* (emphasis omitted). Muhammad alleges the Commission is liable for "failing to adequately hire, train, supervise[,] and instruct" the individual defendants, which she alleges caused them to violate her rights, and she again seeks $2 million in damages, among other things. Doc. 1 ¶¶ 28, 35. According to Muhammad, the deputies' alleged violative conduct was undertaken pursuant to an official policy or ordinance of the Commission. Doc. 1 ¶ 30.

Defendants McLeroy and the Commission argue that Muhammad fails to state any claim against them when the Complaint is examined under the *Iqbal-Twombly* framework. The Court agrees.

### C.   The Claim Against the Commission

The Commission asserts that the claim against it in Count III is based on an erroneous conclusion of law. Specifically, it is based on the legal premise that the Commission can be held liable because it is responsible, through the Lee County Sheriff's Office, for the "hiring, proper training, supervision, and instruction" of the individual defendant sheriff's deputies. Doc. 1 ¶ 27. Legal conclusions like this are not required to be taken as true when considering a motion to dismiss. *See, e.g.*, *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but [l]egal conclusions without adequate factual support are entitled to no assumption of truth.") (quotations and citations omitted). Indeed,

this legal premise is incorrect. In Alabama, the sheriff, who is an elected state official,

employs sheriff's deputies, not a county commission:

> [D]eputy sheriffs of each county are employees of the state, not the county
> in which they perform their duties. Ala. Const., art. V, § 112. . . . The sheriff's
> exclusive authority to 'ferret out crime' also includes the duty to hire, fire,
> and train deputy sheriffs. *Carr v. City of Florence*, 916 F.2d 1521, 1525–
> 1526. . . . Because sheriffs and their deputies are state officers not county
> employees, a county commission may not be held liable on the theory of
> respondeat superior. *Hereford v. Jefferson County*, 586 So.2d 209, 210
> (1991). Because the sheriff has the exclusive authority to hire, fire, and train
> deputies, a county commission may not be held liable for failing to train a
> deputy sheriff.

*Cofield v. Randolph Cnty. Comm'n*, 844 F. Supp. 1499, 1501 (M.D. Ala. 1994); *see also*

*McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781 (1997).

The law places limits on the Commission's responsibilities. *See Terry v. Cook*, 866

F.2d 373, 379 (11th Cir. 1989) (holding statute authorizing county commission to set

number of deputies did not extend authority over hiring and firing of deputies); *Lee v.*

*Mobile Cnty. Comm'n*, 954 F. Supp. 1540, 1545–46 (S.D. Ala. 1995), *aff'd,* 103 F.3d 148

(11th Cir. 1996) (holding county commission did not employ court security officer for

purposes of Title VII) ("The mere duty to pay Lee's salary through the budgeting of funds

for the Circuit Court does not mean that Lee is deemed an employee of the Mobile County

Commission. . ."). In response to the motion to dismiss, Muhammad cited no law granting

the Commission the ability to exercise authority over the sheriff's deputies in any capacity,

including "hiring, proper training, supervision, and instruction." The law is plain that a

county commission may not be held liable on the theory of respondeat superior for the acts

of a sheriff's deputies. Dismissal is required, as "there is no ostensible way that [Muhammad] may prevail" against the Commission. *Id.* at 1502.

Additionally, like the deputies over whom they have responsibility, Alabama's sheriffs are state officials. Ala. Const., art. V, § 112. The sheriff then, if named in an amended complaint as the party responsible for hiring, training, supervising, and instructing the individual defendant sheriff's deputies, could assert a qualified immunity defense. This is an affirmative defense a party must raise, but, in determining whether an amendment to add the sheriff would be futile, the Court need not wade into a possible qualified immunity defense to ascertain the plausibility of the claim. Without an underlying violation of her constitutional rights (or otherwise unlawful or tortious act), there could be no liability for the alleged failure to adequately hire, train, supervise, and instruct that resulted in the requests about which Muhammad complains. *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) (holding that, without an underlying constitutional violation, there can be no supervisory liability by sheriff or county for inmate's suicide, sheriff could not be held liable in individual or official capacity for failure to train deputy, and county could not be held liable on ground that policy caused constitutional violation) (citing *Hicks v. Moore,* 422 F.3d 1246, 1253 (11th Cir. 2005)). As discussed below, the Complaint fails to state a claim against Deputy McLeroy and Deputy Kamisi for a violation of Plaintiff's constitutional rights. Accordingly, without an underlying claim, any claim against the sheriff for an alleged failure to adequately hire, train, supervise, and instruct the deputies would be futile and permitting amendment would be a waste of judicial resources.

D.    The Claim Against the Deputies

1.    McLeroy

Defendant McLeroy asserts that the claim against him must be dismissed because he is entitled to qualified immunity. As noted above, sheriff's deputies are state actors. To gain access to the defense, a state actor must show he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Here, the allegations against McLeroy are based on actions he took in the line and scope of his authority in providing courthouse security. *See* Doc. 1 ¶¶ 15–20, 29 (alleging the named deputies were "acting in their capacity as a deputy sheriff[]"), 30 (deputies' actions were "done under color of state law[] and pursuant to an alleged official policy and/or ordinance of the [Commission]"). Muhammad acknowledged this at the hearing on the motion. Thus, absent a showing that McLeroy violated her constitutional right and that the right was clearly established, qualified immunity will shield this state actor. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Muhammad asserts that McLeroy violated her vaguely and generally described "rights" by asking her to show her bar association card to gain entry to the courthouse without first going through security screening. She alleges he did so pursuant to an official policy. Doc. 1 ¶ 20.

The fatal flaw in her claim against McLeroy, whatever the intended legal basis for the "rights" she asserts, is that, according to Muhammad, McLeroy required this same production of bar licensure proof of <u>every lawyer</u> he did not know. Doc. 1 ¶ 15; Doc. 17 at

7. As McLeroy correctly argues, no plausible inference of unlawful discrimination can arise from this practice. The request to Muhammad could not have been discriminatory on any basis, much less a legally protected basis. *See, e.g., Iqbal,* 556 U.S. at 680–87. The policy—show your bar card if you want lawyer-exclusive entry—was neutral among lawyers. The only disparity in the application of this requirement, based on the factual allegations of the Complaint, which the Court accepts as true, is the innocuous bypass given to lawyers who were already known to McLeroy.[8] Without the ability to allege legally cognizable differential treatment, no plausible claim exists.

Importantly, Muhammad was not denied entry to the courthouse. Instead, she was only precluded from entering through the no-search security line reserved for lawyers until she could produce her bar card. Doc. 1 ¶¶ 16, 18. Muhammad did retrieve her bar card, and, once produced, she was allowed to enter the courthouse without participating in the security search procedures for non-lawyers. *See id.* Given this, Muhammad has not and cannot plead a claim against McLeroy for violation of her right to be free from discrimination. Thus, no analysis of qualified immunity is required. Muhammad's claim against McLeroy should be dismissed, as she cannot state a plausible claim.

---

[8] Muhammad makes no factual allegation that McLeroy only knows people of a race other than African American, knows only non-Muslims, or knows only men. And, common sense would dictate against any such allegation. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). In any event, as Muhammad alleges, the distinction McLeroy makes is based on his familiarity with a person and not on any personal characteristic—protected or otherwise.

2.    Kamisi

Because this party has not been served and because Muhammad seeks early discovery to properly identify this party to amend, the Court considers whether any plausible claim could move forward against this party before allowing early discovery and leave to amend the claim against him.

Muhammad's effort to state a cause of action based on Kamisi's request that she remove her head covering, as with the above claim, presents no legally plausible claim even if the identity of this defendant were known and an amendment were allowed to name him. Critically, Muhammad was <u>not</u> made to remove her head covering. She was told she would have to remove it, but she objected on the basis that the head covering was worn as a part of her Muslim religious practices. Doc. 1 ¶ 5. Muhammad was allowed entry without a security search and was not forced to remove the head covering after voicing her objection; she confirmed this fact at the hearing on the pending motions. *See* Doc. 1 ¶ 18.

The mis-identified deputy's "insiste[nce] that because [Muhammed's] headpiece was not a kufi, it did not represent Muslim attire" (Doc. 1 ¶ 5) was insensitive and perhaps offensive to Muhammed, but she was permitted to wear the head covering. Assuming required removal of a religious headpiece before going through security procedures at a courthouse could be a basis for a claim of religious freedom interference, no such requirement was imposed on Muhammad—she kept her headpiece on and was allowed entry to the courthouse. Muhammad cannot, therefore, state a plausible violation of her religious rights. *Cf. Pressley v. Madison*, No. 2:08-CV-0157-RWS, 2010 WL 5313762, at *3 (N.D. Ga. Dec. 17, 2010) (Plaintiff inmate objected to requiring removal of her hij ab

as a violation of her religious beliefs, which require her to keep her hair covered in the presence of men; court granted summary judgment to government officials on qualified immunity and also noted, "Plaintiff's religious rights were not fundamentally violated. Plaintiff was permitted to cover her head during prayers and was housed in a cell containing only female inmates and guarded only by female Sheriff's deputies. By being placed in a female-only cell guarded by female deputies, and therefore free from the presence of males, Plaintiff no longer possessed any religious obligation to wear a hij ab. To the contrary, Defendants took steps to ensure that Plaintiff would be permitted to observe her religious beliefs during her incarceration at the Detention Center. Therefore, Plaintiff's constitutional rights were not violated when Defendants enforced restrictions against inmates wearing headwear at the Detention Center."); *see also Milner v. Olmstead Cnty. Adult Ctr.*, No. 21-CV-2454 (SRN/HB), 2021 WL 6808299, at *2 (D. Minn. Nov. 23, 2021), *report and recommendation adopted,* No. 21-CV-2454 (SRN/HB), 2022 WL 278743 (D. Minn. Jan. 31, 2022) (holding that plaintiff's "allegation that his Fourth Amendment rights were violated by a mere attempt to view his cellphone by an unidentified unnamed [officer] is not even close to sufficient to state a Fourth Amendment claim"); *Mosavi v. Mt. San Antonio Coll.*, No. CV-15-4147-MWF (AFM), 2016 WL 11517126, at *7 (C.D. Cal. Feb. 23, 2016) (stating that court was "not persuaded that a mere request to perform an objectionable act can violate a Plaintiff's privacy rights"). The deficiency of the claim is not a matter of lacking specificity that could be cured with additional factual assertions against a properly named defendant. *Compare Alberto*, 770 F. App'x at 469 (finding district court abused its discretion in denying leave to amend and

remanding to allow pro se party an opportunity to amend where "a more carefully drafted complaint, which includes more specific allegations against the correct defendant, *might* state a ... claim" the plaintiff should be granted leave to amend.") (emphasis in original) (quotation omitted) *with Silberman*, 927 F.3d at 1133 ("[I]f Silberman had sued the right defendant, would he have stated a claim [?] . . . [W]e hold that he wouldn't (and couldn't) have done so—and, therefore, that amendment would have been futile, and, therefore, that the district court's dismissal is due to be affirmed."). *Cf. Turner v. Williams*, No. 21-11255, 2023 WL 2821728, at *16 (11th Cir. Apr. 7, 2023) ("Since Turner's Complaint does not allege facts sufficient to plausibly show that his arrest was retaliator[y] at all, the First Amendment retaliation claim . . . must consequently fail as well. An official policy cannot be the 'moving force' of a constitutional violation if there is no constitutional violation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Like the claim against McLeroy, this claim is felled because Muhammad can assert no plausible constitutional violation based on the facts.

For the foregoing reasons, each claim asserted in the Complaint, whether asserted under § 1981 through § 1983 as constitutional violations or under § 2000a-1, fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Without any unlawful discriminatory or unconstitutional action pleaded, the claims—no matter the label Muhammad has given them—cannot move forward. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (holding that § 1983 is not an independent source of substantive rights but merely serves as a vehicle for vindicating federal rights conferred by the Constitution or other federal law); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding that

§ 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *Kennamer v. Marshall Cnty., Ala.*, No. 4:22-CV-642-RDP, 2022 WL 2757627, at *3 (N.D. Ala. July 14, 2022) ("The first step in deciding a § 1983 claim is to identify the specific constitutional right allegedly infringed.") (citing *Albright*, 510 U.S. at 271); *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability [under § 1983] when there is no underlying constitutional violation."); *Osorio v. N. Broward Hosp. Dist. Corp. Headquarters/Imperial Point Med. Ctr.*, No. 08-61172-CIV, 2009 WL 3381559, at *1 (S.D. Fla. Oct. 16, 2009) (concluding plaintiff failed to state a claim where 42 U.S.C. § 2000a-1 is a "substantive provisions prohibit[ing] discrimination in public accommodations on the basis of race, color, religion and national origin[, and] Plaintiff has not based her claims upon any of these prohibited bases"); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1359 (M.D. Ala. 1999) ("As with a claim under the equal-protection clause, to maintain a claim under § 1981, [plaintiff] must allege facts demonstrating that [defendant] intentionally discriminated against him [on the basis of his race]") (citations omitted).Whether the pleaded facts are viewed as asserting claims of dissimilar treatment or discriminatory treatment, no violation of the law, constitutional or otherwise, is plausible where the alleged facts establish Muhammad was not denied entry to the courthouse or forced to undergo security procedures and where the initial

requests to her (the treatment at issue) were not made because of her race, religion, or gender.

## IV.   Conclusion

Accordingly, it is ORDERED as follows:

1.   Plaintiff's Motion for Leave to Allow Immediate Limited Discovery (Doc. 15) is DENIED.

2.   Plaintiff's oral Motion to Amend is DENIED.

3.   Defendants' Motion to Strike (Doc. 9) is GRANTED, and all fictitious parties, including the misnamed Deputy Kamisi, are dismissed.

Additionally, the Magistrate Judge RECOMMENDS that the claims against Defendant Commission and McLeroy be DISMISSED.

It is further ORDERED that, by **April 28, 2023**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, is not appealable. Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1.

Done this 14th day of April, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE